UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| A.J. BREDBERG, an individual,<br><br>        Plaintiff,<br><br>   v.<br><br>SOIL SCIENCE SOCIETY OF AMERICA, a Wisconsin Corporation,<br><br>        Defendant. | CASE NO. C10-5724BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION |

This matter comes before the Court on Defendant's ("SSSA") motion to dismiss for lack of personal jurisdiction or alternatively to transfer venue. Dkt. 7. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion to dismiss and denies the alternative motion to transfer for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On November 8, 2010, SSSA filed a motion to dismiss Plaintiff's ("Bredberg") action for lack of personal jurisdiction. Dkt. 7. On November 26, 2010, Bredberg opposed SSSA's motion to dismiss. Dkt. 9. On December 9, 2010, SSSA replied. Dkt. 12.

**II. FACTUAL BACKGROUND**

Bredberg, at all material times, was a resident of Washington, a Certified Soil Scientist, a Certified Professional Soil Classifier, a Professional Wetland Scientist, a

USDA Technical Service Provider, and a more than thirty-year member of SSSA. Complaint ¶ 1.

SSSA is a scientific society that is a non-stock corporation, incorporated in and having its principal place of business in Madison, Wisconsin. Affidavit of Ellen Bergfeld ("Bergfeld Aff.") ¶ 2. SSSA maintains all of its files in Madison. *Id*. SSSA is not authorized to do business in Washington and does not have a registered agent for service of process in Washington. *Id*. SSSA is "devoted to the promotion of the soil sciences, and it has approximately 6,000 members worldwide," of which 138 reside in Washington (approximately 2%). *Id*. ¶ 4. SSSA's members, like Bredberg, are not owners or employees of SSSA, and they are not authorized to act on behalf of SSSA. *Id*. ¶ 5.

SSSA also certifies people meeting certain requirements as Certified Soil Scientists and Certified Professional Soil Classifiers. *Id*. ¶ 8. Obtaining such certification is voluntary. Currently, 56 certified individuals reside in Washington, less than 5% of the persons certified by SSSA. *Id*.

To obtain certification, a person must notify SSSA of their interest and SSSA will arrange an exam to be proctored in the person's locale, typically at a local college. *Id*. ¶ 9. SSSA employees do not proctor the exam, and the exams are returned to SSSA in Madison for grading. *Id*. ¶ 10. A standing board made from volunteers around the United States determines whether an individual should be certified; none of the current board members reside in Washington. *Id*.

To carry out its mission of advancing the soil sciences, SSSA provides flyers and handouts to colleges and universities. *Id*. ¶ 11. As part of these efforts, SSSA will occasionally send representatives to trade shows or other similar events to promote its mission. *Id*. at 11.

People, like Bredberg, who become certified professionals through SSSA must pay an annual fee of $95 and agree to be bound by the Code of Ethics set out by SSSA's

ORDER - 2

regulatory body, the American Society of Certified Professionals in Agronomy, Crops, and Soils ("ARCPACS"). Complaint ¶ 8. Article V, paragraphs 1-3 of the ARCPACS Code of Ethics requires a certified professional, like Bredberg, to bring an ethics complaint when he/she has "positive knowledge of a deviation from the Code by another Registrant." Complaint ¶ 10.

On March 28, 2009, Bredberg filed an ethics complaint against another registrant (also referred to as a certified professional), Kathy Verble ("Verble"). Bredberg believed that Verble violated its code of ethics by incorrectly determining hydric soil conditions on a property in Lebanon, Oregon. *Id*. ¶ 11. In response to the reported violation, Verble filed a counterclaim against Bredberg with SSSA that alleged Bredberg lied, misrepresented, and distorted facts in his ethics complaint. *Id.* ¶ 12. Verble's counterclaim was supported through the affidavit of another certified Professional Wetland Scientist, Janet Morlan ("Morlan"). *Id*. ¶ 13. Verble's counterclaim and Morlan's affidavit were made available to the worldwide membership of SSSA, Bredberg's current and potential clients and customers, and city, state, and federal officials. *Id*. ¶ 14. Bredberg contends in his complaint that the information published contained non-privileged false and defamatory statements and implications. *Id*. ¶ 16.

Finally, as a result of SSSA's investigation, SSSA cleared Verble of Bredberg's complaint of her perceived ethical violations. However, SSSA determined through its investigation of Verble's counterclaim that Bredberg had violated the code of ethics and he was cited for his actions by SSSA. SSSA required Bredberg to take continuing education as part of remedying the matter. Bredberg lost his appeal to the SSSA board regarding the ethical violations for which he was cited.

Bredberg's complaint alleges that SSSA owed and breached contractual duties to properly investigate his complaint, Verble's counterclaim, and to exonerate him from any false statements. *See, e.g., id*. ¶¶ 20-24, 33-37. Bredberg further alleges that SSSA

ORDER - 3

violated its duty of good faith and fair dealing as a result of its investigation or lack thereof. Additionally, Bredberg alleges several tort causes of action: (1) misrepresentation/negligence; (2) tortious interference with economic relations; (3) false light; and (4) intentional infliction of emotional distress. *Id*. ¶¶ 46-59.

## III. DISCUSSION

**A.     Personal Jurisdiction Framework**

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may bring a motion to dismiss for lack of personal jurisdiction. The plaintiff then bears the burden of proving such jurisdiction. *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). When the district court rules on the motion based on affidavits and discovery materials without an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. *See Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002). "In determining whether [Plaintiff] [has] met this prima facie burden, uncontroverted allegations in [his] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [his] favor . . . .'" *Id.* (quoting *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (brackets in original)). "Additionally, any evidentiary materials submitted on the motion 'are construed in the light most favorable to the plaintiff and all doubts are resolved in [his] favor.'" *Id.* (quoting *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 n. 1 (9th Cir. 1990) (citation and internal quotation marks omitted; brackets in original)).

"In the absence of a federal rule or statute establishing a federal basis for the assertion of personal jurisdiction, the personal jurisdiction of the district courts is determined in diversity cases by reference to the law of the state in which the federal court sits." *Kendall v. Overseas Dev. Corp.*, 700 F.2d 536, 538 (9th Cir. 1983) (citations omitted); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.

ORDER - 4

2004) (citing Fed. R. Civ. P. 4(k)(1)(a)). Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits. *Byron Nelson Co. v. Orchard Management Corp.*, 95 Wn. App. 462, 465 (1999). Because Washington's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. *Schwarzenegger*, 374 F.3d at 800-801. "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted)).There are two types of personal jurisdiction: general and specific. *See Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986).

### 1.     **General Jurisdiction**

General personal jurisdiction "permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801. A court may assert general jurisdiction over a defendant if the defendant engages in "substantial" or "continuous and systematic" business activities. *Helicopteros*, 466 U.S. at 416 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). "The standard for establishing general jurisdiction is 'fairly high,' and requires that the defendant's contacts be of the sort that approximate physical presence" in the forum state. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *see also Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (collecting cases where general jurisdiction was denied despite the defendants' significant contacts with the forum states).

"Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent

ORDER - 5

for service of process, holds a license, or is incorporated there." *Bancroft*, 223 F.3d at 1086. In applying the "substantial" or "continuous and systematic" contacts test, the focus is primarily on two areas. First, there must be some kind of deliberate "presence" in the forum state, including physical facilities, bank accounts, agents, registration, or incorporation. An additional consideration is whether the defendant has engaged in active solicitation toward and participation in the state's markets, i.e., the economic reality of the defendant's activities in the state. *Helicopteros*, 466 U.S. at 417 (1984); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984).

Here, Bredberg has not sufficiently pled facts to support his contention that SSSA conducts the requisite "substantial" or "continuous and systematic" business activities that would permit the Court to exert general jurisdiction over SSSA in this matter.

### 2. Specific Jurisdiction

In the absence of general personal jurisdiction, a forum may only exercise specific personal jurisdiction over a defendant. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). The Ninth Circuit employs a three-part test to determine whether the exercise of specific jurisdiction satisfies the requirements of due process: (1) the defendant must have purposely availed itself of the privilege of conducting activities in the forum; (2) the plaintiff's claim must arise out of that activity; and (3) the exercise of jurisdiction must be reasonable. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990) (emphasis added). Under this three-prong test, the plaintiff bears the burden of satisfying the first two prongs. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff meets this burden, the defendant then has the burden to present a compelling case why the exercise of jurisdiction would be unreasonable. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

#### a. Purposeful Availment

As explained by the Ninth Circuit:

> We often use the phrase "purposeful availment," in shorthand fashion, to include both purposeful availment and purposeful direction . . ., but availment and direction are, in fact, two distinct concepts. A purposeful availment analysis is most often used in suits sounding in contract . . . . A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort.

*Schwarzenegger*, 374 F.3d at 802. Because Bredberg asserts both contract and tort claims against SSSA, the Court analyzes personal jurisdiction under both the purposeful availment and the purposeful direction analysis.

"Turning first to purposeful direction, under our precedents, the purposeful direction . . . requirement is analyzed in intentional tort cases under the 'effects' test derived from *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 . . . (1984)." "Under *Calder,* the 'effects' test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger,* 374 F.3d at 803. A showing that a defendant purposefully directed his conduct toward a forum state usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere. *Schwarzenegger*, 374 F.3d at 803.

Here, Bredberg has not pled sufficient facts to establish that SSSA ever committed an intentional act that was expressly aimed at Washington. Indeed, the involvement of SSSA that relates to the alleged tortious conduct all revolves around circumstances arising in Oregon with respect to the perceived ethical violations of Verble. Thus, while Bredberg makes a valid argument that SSSA would have known its actions in Oregon could cause harm to Bredberg in Washington (the third element, above), Bredberg fails to establish the first two elements (intentional act, expressly aimed at forum state). Further, and more tellingly, Bredberg's tort claims actually arise out of his breach of contract

ORDER - 7

claims. Accordingly, the Court must apply the purposeful availment test in determining whether it has specific jurisdiction over SSSA.

Under the purposeful availment test, the Ninth Circuit considers "whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummates a transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Yahoo!*, 433 F.3d at 1206. A defendant has engaged in affirmative conduct and thereby "purposely availed himself of the benefits of a forum if he has deliberately engaged in significant activities within a State *or has created 'continuing obligations'* between himself and the residents of the forum." *Gray & Co. v. Fistenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (quoting Burger King Corp., 471 U.S. at 475-76) (emphasis added); *see Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997) (same) (citing *Ballard*, 65 F.3d at 1498). However,

> [a] contract alone does not automatically establish the requisite minimum contacts necessary for the exercise of personal jurisdiction. "Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are the factors to be considered. The foreseeability of causing injury in another state is not a sufficient basis on which to exercise jurisdiction.

*Gray*, 913 F.2d at 760 (quoting and citing *Burger King*, 471 U.S. at 474, 478-79).

The Ninth Circuit's holding in *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991), is particularly helpful and somewhat factually analogous to the instant matter. There, the Ninth Circuit discussed the purposeful availment issue in a contract case as follows:

> In the contract context, however, *Burger King* specifically noted that the existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the nonresident. 471 U.S. at 478, 105 S.Ct. at 2185; see also *Gray*, 913 F.2d at 760. *Burger King* stated that "with respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)).

ORDER - 8

Appellees argue that because Roth initiated all the contacts and because he was the one who "reached out" to effect the contract, they should not be subject to California law. There was no solicitation of business by appellees, they maintain, that resulted in contract negotiations or the transaction of business. *See Shute*, 897 F.2d at 381; *Sinatra*, 854 F.2d at 1195. We have explained that "the purposeful availment analysis turns upon whether the defendant's contacts are attributable to 'actions by the defendant himself,' or conversely to the unilateral activity of another party." *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986) (*quoting Burger King*, 471 U.S. at 475) (emphasis in *Burger King*).

Here, it seems clear that the predominant efforts were made by the appellant, not the appellees. Roth traveled to Havana, Barcelona, and Mexico City in his peripatetic effort to secure the movie rights. Garcia Marquez and Balcells were in Los Angeles for other purposes when each met individually with Roth. While we concede that negotiations did take place at that time, it should be borne in mind that "temporary physical presence" in the forum does not suffice to confer personal jurisdiction. *FDIC*, 828 F.2d at 1443. Further, Roth and his agents placed over 100 calls and sent numerous faxes to the two appellees. "When a California business seeks out purchasers in other states . . . [and] deals with them by out-of-state agents or by interstate mail and telephone, it is not entitled to force the customer to come to California to defend an action on the contract." *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1252 (9th Cir. 1980) (quoting *Interdyne Co. v. SYS Computer Corp.*, 31 Cal. App.3d 508, 510 (1973)).

Roth also contends that the phone lines were used in the other direction-i.e., appellees made calls and returned letters and faxes to him. As this court held in *Shute*, "[M]any transactions take place solely by mail or wire across state lines, obviating the need for physical presence . . . . Thus, the Court has held that the physical absence of the defendant and the transaction from the forum cannot defeat the exercise of personal jurisdiction." *Id.* at 382. However, "[b]oth this court and the courts of California have concluded that ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'" *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (quoting Gonzalez, 614 F.2d at 1254) (footnote omitted); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 816 (9th Cir.1988) (no jurisdiction where contract signed in forum because negotiated in England, and execution and termination conducted by mail).

There are two facts, then, that marginally work in appellees' favor: their minimal physical presence in the forum and the fact that it was appellant who made the sedulous efforts of solicitation. While this is a very close call, a final and broader issue appears to swing the first prong for Roth, namely the future consequences of the contract. *See, e.g., FDIC*, 828 F.2d at 1443 ("[t]he negotiations and contemplated future consequences of the contract . . . must be considered"); *Gray*, 913 F.2d at 760 ("'[p]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' are the factors to be considered") (quoting *Burger King*, 471 U.S. at 479); *Corporate Inv.*

> *Business Brokers v. Melcher*, 824 F.2d 786, 789 (9th Cir. 1987) ("[*Burger King*] insisted that past and future consequences of the contractual arrangement involving a resident of the forum state be evaluated."); *Hirsch*, 800 F.2d at 1478 ("prong is satisfied when a defendant takes deliberate actions within the forum state or creates continuing obligations to forum residents"). The *Burger King* Court, in finding jurisdiction, emphasized that the Michigan franchisee defendant had entered into a relationship that "envisioned continuing and wide-reaching contacts with *Burger King* in Florida [the forum]." 471 U.S. at 480.
>     The point here is simply that the contract concerned a film, most of the work for which would have been performed in California. Though the shooting most likely would have taken place in Brazil, all of the editing, production work, and advertising would have occurred in California. This is not an instance where the contract was a one-shot deal that was merely negotiated and signed by one party in the forum; on the contrary, most of the future of the contract would have centered on the forum . . . . In looking at the "economic reality," H*ai*sten, 784 F.2d at 1398, it seems that the contract's subject would have continuing and extensive involvement with the forum.
>     Though neither side decisively triumphs under this analysis, it appears that there was enough purposeful availment here to compel a finding of jurisdiction on this prong.

*Roth*, 942 F.2d at 622.

Applying the reasoning of *Roth* to this case, the Court focuses on the fact that Bredberg and SSSA entered into a contractual arrangement whereby Bredberg was obligated to follow the code of ethics and report violations of other registrants who were believed to have violated the same code of ethics. Bredberg asserts that this duty is mirrored by the SSSA's duty to adequately and properly investigate such claims. Although it is uncontroverted that Bredberg contacted SSSA voluntarily to become certified through their program, the parties appeared to have contemplated an ongoing relationship between a Washington resident (Bredberg) and a Wisconsin organization (SSSA). Bredberg paid $95 to SSSA to become certified and as a result of being certified he was thereafter obligated by SSSA to conform with and be a member-enforcer of the SSSA's code of ethics. Under the terms of their relationship, SSSA was not only required to investigate claims against Bredberg for ethical violations but also to investigate the violations that Bredberg might report. SSSA must have foreseen the distinct possibility of

enforcing and carrying out its duties with respect to the code of ethics as it pertained to Bredberg, a Washington citizen. Thus, like the case in *Roth*, this close call is resolved in favor of Bredberg because SSSA has sufficiently availed itself of the privileges and protections of Washington.

### b. Locus of Activity

The second prong of the Ninth Circuit's test to determine whether the exercise of specific jurisdiction satisfies due process is that the plaintiff's claim must arise out of that activity conducted in the forum state. The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's cause of action arises out of the defendant's forum-related activities. *Doe v. America Nat. Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997); *see Omeluk v. Langsten Slip & Batbyggeri*, 52 F.3d 267, 271 (9th Cir. 1995). The "arising out of" requirement is met if, but for the contacts between the defendant and the forum state, the cause of action would not have arisen. *See Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995).

Applying the "but for" test to Bredberg's case, the Court concludes that, but for the contract with a Washington citizen, which obligated Bredberg to report ethical violations and required SSSA to investigate and enforce the code of ethics, this action would not have arisen.

### c. Reasonableness

Finally, under the third prong of the Ninth Circuit test, Plaintiff must demonstrate that the exercise of jurisdiction is reasonable. "[T]here is a presumption of reasonableness upon a showing that the defendant purposefully directed his action at forum residents which the defendant bears the burden of overcoming by presenting a compelling case that jurisdiction would be unreasonable." *Columbia*, 106 F.3d at 289 (quoting *Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1397 (9th Cir. 1986) (citing *Burger King*, 471 U.S. at 477)).

ORDER - 11

The Ninth Circuit considers the following seven factors in determining whether the exercise of specific jurisdiction over a defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant of litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See Ziegler v. Indian River Country*, 64 F.3d 470, 475 (9th Cir. 1995) (citing *Terracom*, 49 F.3d at 561) (finding that all seven factors must be weighed, but none are dispositive).

### i. Extent of Interjection

Although SSSA argues that it did not purposefully interject itself into Washington, it fails to recognize, or at least discounts the fact, that it set up an organization that seeks to certify individuals around the country in different states. Put otherwise, SSSA has interjected itself into Washington by creating a certification program that invites people like Bredberg to apply and pay for the opportunity to be certified in an effort to remain competitive in the soil sciences industry in Washington and elsewhere.

Therefore, this factor tips in favor of Bredberg.

### ii. Burden on SSSA

SSSA argues that the burden on it to litigate this matter in Washington is heavy. SSSA asserts that it has no officers, agents, employees or otherwise in Washington. SSSA maintains that the greater majority of the files and witnesses related to this matter reside in Wisconsin. *See* Bergfeld Aff. ¶ 21. SSSA also maintains that Wisconsin residents are the people who have knowledge about the internal policies and procedures that relate to the investigation of ethics complaints. *Id*. Finally, SSSA is a nonprofit whose financial bottom line would be significantly impacted if it were to be required to litigate this matter in Washington. *Id.*

Bredberg argues that the files would be easily transferred to Washington electronically. He argues that SSSA board members have to travel throughout the country for their positions on a somewhat regular basis. He further argues that the ethics determination that SSSA made against his favor was conducted by teleconference because none of its members reside in Wisconsin. Additionally, he points out that many of his witnesses reside in Washington.

On balance, this factor favors SSSA. *See Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995) (defendant's "burden is the primary concern in an assessment of reasonableness) (citing *FDIC v. British-American Ins. Co.*, 828 F.2d 1439, 1444 (9th Cir. 1987)).

### iii. Conflict with Sovereignty

SSSA is a Wisconsin non-profit corporation operating under the applicable laws of Wisconsin. Permitting this action to go forward in this Court deprives Wisconsin of its ability to regulate businesses incorporated in and being principally based in Wisconsin.

Therefore, this factor weighs in favor of SSSA.

### iv. Forum State's Interest

SSSA does not dispute that Washington has a significant interest in redressing the injuries of its residents. However, SSSA asserts that Bredberg will be able to obtain any available remedies in the Western District of Wisconsin. The causes of action alleged by Bredberg are not Washington specific and are of a general tort and contract nature. Washington's interest would be able to be served if this action were venued in Wisconsin.

Therefore, this factor is somewhat neutral or slightly in favor of Bredberg.

### v. Efficient Resolution

With many of the witnesses and a majority of the evidence being located in Wisconsin, it's difficult to escape the reality that this action would be more efficiently litigated in Wisconsin.

ORDER - 13

Therefore, this factor weighs in favor of SSSA.

### vi. Importance of Forum to Plaintiff's Interests

This factor "nominally remains part of this test, [however,] cases have cast doubt on its significance." *See, e.g., id.* (collecting cases).

Therefore, this factor does not significantly influence the Court's analysis.

### vii. Existence of Alternative Forum

The burden of showing the unavailability of an alternative forum rests with Bredberg. *Id.* (citing *FDIC,* 828 F.2d at 1445. Breberg has not established that he would be precluded from suing SSSA outside of Washington or that his claims could not be effectively remedied in other jurisdictions, such as Wisconsin. *See id.*

Therefore, this factor weighs heavily in favor of SSSA.

### viii. Balancing the Factors

On balance, the factors weigh mostly, if not strongly, in favor of SSSA. Therefore, SSSA has met its burden in making a compelling case that the exercise of jurisdiction over it would be unreasonable in this case.

**d.  Conclusion**

Based on the foregoing, the Court concludes it would be unreasonable to exert specific jurisdiction over SSSA in this matter.

**B.  Motion to Dismiss or Transfer**

SSSA moves the Court to either dismiss this action for lack of personal jurisdiction or to exercise its authority to transfer the matter to the Western District of Wisconsin pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

Because the Court concludes above that it lacks both general and specific personal jurisdiction over SSSA, the Court grants SSSA's motion to dismiss.

Having found a lack of personal jurisdiction, the Court need not entertain the alternative motion for change of venue pursuant to 28 U.S.C. §§ 1404(a), 1406(a).

However, even if it were determined that specific personal jurisdiction was reasonable to exert over SSSA, the Court suggests that a venue would more properly lie in either Oregon or Wisconsin.

### IV. ORDER

Therefore, it is hereby **ORDERED** that the Court **GRANTS** SSSA's motion to dismiss this action for lack of personal jurisdiction.

DATED this 24th day of January, 2011.

BENJAMIN H. SETTLE  
United States District Judge

ORDER - 15